70 Cal.Rptr. 21]

[Civ. No. 11908. Third Dist. July 12, 1968.]

JOHN GAYLON McCULLAR, Petitioner, v. THE SUPE-
RIOR COURT OF EL DORADO COUNTY, Respondent;
THE PEOPLE, Real Party in Interest.

Paul Ligda, Public Defender, for Petitioner.

No appearance for Respondent.

Thomas C. Lynch, Attorney General, Doris H. Maier, Assistant Attorney General, and Jack R. Winkler, Deputy Attorney General, for Real Party in Interest.

FRIEDMAN, J.—Petitioner seeks a writ prohibiting his prosecution on a grand theft charge in El Dorado County, the

ground being infringement of his constitutional right to a speedy trial.

Petitioner and two others were arrested on March 2, 1966, on a charge of stealing a reel of telephone cable. A complaint was filed the next day. He was certified to the juvenile court and released on recognizance. The juvenile court on April 15 rejected jurisdiction and directed resumption of the prosecution. That day he appeared before the magistrate with his privately retained attorney and signed a written promise to appear on May 3, 1966. Several days before the scheduled appearance petitioner's attorney and the district attorney's office entered into an oral agreement postponing further proceedings against petitioner until completion of the prosecution of Renfro, one of petitioner's codefendants. Although the details of the agreement are not before us, its general features are clear enough. The agreement contemplated a delay pending a decision on appeal in Renfro's case. Apparently the value of the stolen cable was a matter of some dispute. If its value were less than $200, the crime would be petty rather than grand theft. The cable had been manufactured to the specifications of the telephone company. Being unique, its replacement cost was relatively high, its resale value relatively low. If the appellate decision were favorable to Renfro, the charge against petitioner might be dismissed or reduced to petty theft. Eventually the appellate court affirmed Renfro's conviction of grand theft, holding that under valuation tests sanctioned by law there was substantial evidence of a value exceeding $200. (*People* v. *Renfro,* 250 Cal.App.2d 921 [58 Cal.Rptr. 832].)

According to an affidavit by petitioner's then attorney, the attorney did not discuss the postponement in any detail with his client, but simply told him not to appear in court on May 3. On June 7 he wrote petitioner, telling him that a court decision "on a legal point" was awaited. Petitioner acknowledged the letter with a note of thanks, stating: "We were wondering what happen[ed] about the case." Months passed. Having been elected district attorney, petitioner's counsel assumed office presumably in January 1967. Early in 1967 petitioner went to the sheriff's office to ascertain the status of his case. He was informed that his lawyer had become district attorney and was told to contact the lawyer's former law firm. He did so and was told that the firm could no longer represent him, that he should await word "from the Court."[1]

---

[1]The quoted phrase is petitioner's.

The remittitur in the Renfro appeal was filed July 13, 1967. A few weeks later, on August 8, the district attorney's office requested the Attorney General to take over the prosecution, since the district attorney, as petitioner's former counsel, was disqualified. In his return to our order to show cause, the Attorney General states that he communicated with the public defender of El Dorado County in early October 1967, to learn petitioner's whereabouts and to arrange for his preliminary examination. The public defender, however, would be absent on vacation until November 9 and had no deputy.[2] On October 23 the Attorney General caused the filing of a new complaint and the issuance of an arrest warrant. On November 6 petitioner received word of the arrest warrant and surrendered the next day. He was admitted to bail. After a preliminary examination on December 1, he was bound over to the superior court. A grand theft information was filed on December 14. At petitioner's request his arraignment was twice postponed, once from December 26 to January 8, 1968, and again from January 8 to January 29. On the last date petitioner moved for dismissal, alleging denial of his right to speedy trial. Rejection of that motion was followed by the present proceeding.

The basic characteristics of the right invoked by petitioner are described in *Barker* v. *Municipal Court,* 64 Cal.2d 806 [51 Cal.Rptr. 921, 415 P.2d 809]. We summarize them: Both the Sixth Amendment to the federal Constitution and article I, section 13, of the California Constitution guarantee a speedy trial to persons accused of crime. The timetables fixed by the California Penal Code supplement and interpret the constitutional mandate; the latter, however, is self-executing. The guarantee provides protection against delay caused "'either by willful oppression, or the neglect of the state or its officers.'" (*Ibid.,* p. 811.) What is a speedy trial in the constitutional sense is an individualized inquiry which turns on the existence of good cause for the delay. Where the delay is extensive, no affirmative showing of prejudice is necessary. (*Ibid.,* p. 812.)

An accused person may waive his constitutional right to a speedy trial and its accompanying statutory requirements. (*People* v. *Wilson,* 60 Cal.2d 139, 146 [32 Cal.Rptr. 44, 383 P.2d 452].) His consent to a trial or other proceeding at a

---

[2]The record does not indicate that at the time of the Attorney General's inquiry the public defender had become petitioner's counsel of record or had undertaken to represent petitioner.

date beyond the prescribed limit " 'is equivalent to a post-ponement upon his application' " and hence constitutes a waiver of the right; consent will be presumed if he fails to make timely objection to delay and fails to move for dismissal. (*Ibid.,* p. 146.)

█ Penal Code section 860 directs the magistrate to proceed with the preliminary examination of a felony defendant "immediately after the appearance of counsel." Petitioner's first attorney, however, entered into an arrangement with the prosecution which had the practical effect of postponing the preliminary examination for approximately 14 months, until the decision in Renfro's appeal became final. With some inapplicable exceptions, counsel for the accused has exclusive control over defense tactics. (*People* v. *Darling,* 58 Cal.2d 15, 19-20 [22 Cal.Rptr. 484, 372 P.2d 316]; *People* v. *Mattson,* 51 Cal.2d 777, 787-788 [336 P.2d 937]; Witkin, Cal. Criminal Procedure (1963) §§ 377-379.) █ Generally, a waiver of time of trial by defense counsel is binding on the client. (*People* v. *Tahtinen,* 50 Cal.2d 127, 131 [323 P.2d 442]; *People* v. *Johnson,* 205 Cal.App.2d 831, 837 [23 Cal.Rptr. 608]; Note, 57 A.L.R.2d 302, 321.)

The record supplies the impression that petitioner's attorney did not consult closely with his client or convey to him a clear understanding of the objective or potential duration of the postponement. █ Whatever the desirability of clear-cut attorney-client understandings, counsel ordinarily need not inform his client of a particular right before waiving it for him. (*People* v. *Hill,* 67 Cal.2d 105, 114 [60 Cal.Rptr. 234, 429 P.2d 586].) █ Even so, petitioner was made aware of an indefinite postponement. Since he was at liberty on recognizance, the postponement did not subject him to protracted custody. As an alternative to immediate trial and a possible felony conviction, the arrangement offered a chance of ultimate dismissal or reduction to a misdemeanor charge. Absent exceptional circumstances, the exchange of time for such potential benefits would seem a highly acceptable bargain. We conclude that the effective waiver occurred, carrying the proceedings past July 13, 1967, the date of the remittitur in Renfro's appeal.

No fixed Penal Code deadline appears to govern the resumption of petitioner's prosecution at that point. While section 860 directs an immediate preliminary examination after the appearance of counsel, that section presupposes the accused's physical appearance before the magistrate.

Implicit in the agreed postponement 14 months earlier was an orderly resumption of the prosecution. The initial step was petitioner's production before a magistrate. Petitioner was at liberty on recognizance. His counsel had become district attorney and could not be expected to produce him. Indeed, the attorney's assumption of the district attorney's office left both the prosecution and defense without immediately available, active legal representation.[3] Resumption of the proceedings entailed arrangements for the Attorney General's entry into the case as public prosecutor, followed by arrangements for petitioner's appearance before a magistrate, either voluntarily or through a warrant of arrest. The record demonstrates that the Attorney General was called into the case with reasonable expedition, attempted without undue delay to locate petitioner and, being unsuccessful, filed a new complaint and secured an arrest warrant on October 23, 1967. By that time, somewhat more than three months had elapsed since the Renfro remittitur. Although, in the light of hindsight, less time might have been consumed, the passage of time was primarily attributable to reasonably expeditious prosecution activities, traceable in part to the original postponement and in part to the disqualification of petitioner's attorney. (Cf. *People* v. *Brock*, 87 Cal.App. 601, 609-610 [262 P. 369, 263 P. 544].) Thus there was good cause for the delay and certainly no willful oppression or neglect on the part of the prosecution. After petitioner's November 6 surrender, the proceedings moved along without delays other than those permitted or requested by the defense. Neither before nor after the Renfro decision was there an infringement of petitioner's right to a speedy trial.

Petitioner nevertheless urges prejudice from the delayed resumption, important evidence having been destroyed. Although the district attorney's office had possession of samples of the stolen cable, the reel itself remained in the custody of the telephone company in Placerville. In August 1967 the deputy district attorney responsible for the prosecution informed the telephone company that the cable would no longer be needed as evidence. The telephone company then

---

[3]Once an attorney becomes defense counsel of record, he is responsible for his client's defense until he is relieved by an order of court. (*Smith* v. *Superior Court*, 68 Cal.2d 547, 559, 572 [68 Cal.Rptr. 1, 440 P.2d 65]; *In re Martinez*, 52 Cal.2d 808, 813 [345 P.2d 449].) Thus when petitioner's attorney became district attorney, that event did not automatically terminate his responsibility. A timely substitution of counsel by leave of court represented the obvious solution to the obvious conflict of responsibility.

shipped the reel to Western Electric Company in San Leandro, where it was destroyed. Petitioner was unaware of this event and, having no practically available counsel, gave no effective consent. Not until December 1967, when petitioner's present attorney requested an opportunity to inspect the cable, did the defense become aware of its destruction.

The claim of prejudice flows from the destruction of evidence under prosecution control, not from the lapse of time. Thus the issue of destroyed or suppressed evidence is quite separate from the claim of delayed prosecution.

 When evidence is favorable to an accused and material either to guilt or punishment, its suppression is a denial of fair trial and due process, irrespective of the prosecution's good or bad faith. (*Brady* v. *Maryland,* 373 U.S. 83, 87-88 [10 L.Ed.2d 215, 218-219, 83 S.Ct. 1194]; *People* v. *Kiihoa,* 53 Cal.2d 748, 752 [3 Cal.Rptr. 1, 349 P.2d 673].) An analogous kind of suppression is the concealment of a police informer who is a material witness on the issue of guilt. Even though his testimony may conceivably injure rather than aid the defense, the potential of defense deprivation is such that the prosecution must disclose his identity or dismiss the prosecution. (*People* v. *Garcia,* 67 Cal.2d 830, 835-836 [64 Cal.Rptr. 110, 434 P.2d 366]; *People* v. *Kiihoa, supra,* 53 Cal.2d at p. 751; *People* v *McShann,* 50 Cal.2d 802, 809 [330 P.2d 33].)

 Here, destruction of the stolen cable forestalls accurate assessment of its defensive possibilities. From the samples, experts would be able to testify to a value per unit of length. Other elements, such as the length of the cable on the reel and its physical condition, are now beyond the reach of first-hand investigation. Cross-examination opportunities are correspondingly curtailed. In his own defense petitioner would be entitled to pursue such inquiries independently of the Renfro trial and judgment. (See *People* v. *Collins,* 242 Cal.App.2d 626, 634-635 [51 Cal.Rptr. 604].)

The analogy to the undisclosed police informer is only partial. Suppression of the identity of an informer who can supply testimony material to the guilt issue closes possible paths to the establishment of innocence. The destruction of all but samples of the stolen property would not, ordinarily, have that effect. It may impede the defense in demonstrating a value below the petty theft limit of $200. Whatever its quantity and quality, the destroyed reel had some value. In the terminology of *Brady* v. *Maryland, supra,* the stolen cable may have been material to punishment but not to guilt. If

independent trial evidence demonstrates petitioner's participation in its theft, his remaining defense will then aim at establishing petty instead of grand theft. Without a showing that the suppression deprives him of a fair trial on the guilt issue, he is not entitled to dismissal.

■ With its substantive potential so limited, the suppression issue seeks appropriate procedural expression. Although the courts speak of dismissal as the price of prosecution suppression,[4] they do not apparently mean to suggest a nonstatutory, pretrial motion. Where evidentiary inquiry during a preliminary examination establishes deprivation of a substantial defense right, the deprivation may be asserted through a motion to set aside the information under Penal Code section 995 and by a petition for prohibition under section 999a. (*Jennings* v. *Superior Court,* 66 Cal.2d 867, 875, 878-880 [59 Cal. Rptr. 440, 428 P.2d 304]; *Priestly* v. *Superior Court,* 50 Cal.2d 812, 818-819 [330 P.2d 39].) Again, when the suppression of vital evidence or prejudicial impairment of the right of cross-examination is established through the ordinary processes of trial, a reversal of the conviction results. (*People* v. *Johnson,* 68 Cal.2d 646, 660 [68 Cal.Rptr. 599, 441 P.2d 111]; *People* v. *Kiihoa, supra,* 53 Cal.2d at p. 754.) In an appropriate case an appellate court has authority to reduce the grade of the offense. (See e.g., *People* v. *Simpson,* 26 Cal. App.2d 223, 230 [79 P.2d 119], modification from grand to petty theft.) Either procedure—preliminary examination or trial—supplies the reviewing court a record of evidentiary inquiry into the character, the materiality and exculpatory potential of suppressed evidence. Such a record was not made here. The present proceeding is thus inappropriate to fix the suppression's result. Destruction of the cable came to light after petitioner's December 1 preliminary examination. He has the opportunity to exploit the issue at his forthcoming trial.

The petition is denied and the order to show cause discharged.

Pierce, P. J., and Regan, J., concurred.

---

[4]See, for example, *People* v. *Kiihoa, supra,* 53 Cal.2d at page 751: "[T]he prosecution is required to disclose the informer's name or dismiss the case, on proper application by the defendant to the court."