[Crim. No. 14737.   Second Dist., Div. One.   Dec. 16, 1968.]

THE PEOPLE, Plaintiff and Respondent, v. MANUEL
PETE NIETO, Defendant and Appellant.

David W. O'Brien, under appointment by the Court of Appeal, for Defendant and Appellant.

Thomas C. Lynch, Attorney General, William E. James, Assistant Attorney General, and Arthur B. Rosenfeld, Deputy Attorney General, for Plaintiff and Respondent.

LILLIE, J.—A jury found defendant guilty of three counts of using a minor (Dennis Van Johnson) to sell heroin (§ 11502, Health & Saf. Code) and one count of possession for sale of heroin (§ 11500.5, Health & Saf. Code) and the alleged prior felony conviction (first degree burglary) to be true. He appeals from the judgment and order denying motion for new trial. The appeal from the order is dismissed.

Dennis Van Johnson,[1] 16 years old, overheard defendant tell Luis Gonzales he was selling heroin. Two weeks later (January 14, 1967) Dennis met defendant who gave him ten balloons containing heroin; he was to sell them to "hyps" for $60 each out of which he was to keep $10 for himself and give $50 to defendant (count II). On February 17, 1967, near Bixby Slough defendant gave Dennis more heroin which he sold under the same arrangement (count III). Later defendant contacted him and they met at the same place on February 28, 1967, at which time defendant gave him several more balloons (count I) but before he could sell them all he was arrested on March 1, 1967; he had sold only two and still had about $100 on his person. On March 1, 1967, about 20 minutes before he was arrested, he saw defendant at Bixby Slough; Dennis had placed several of the unsold balloons in a paper cup on the ground; he had a gun and a clip, which he had received from a customer in exchange for a balloon, in a paper bag which he placed about 25 feet away.

On March 1, 1967, Officer Kline and Officer Knowles, trained in narcotic investigation and a qualified expert on narcotics and dangerous drugs, were driving past Bixby Slough and noticed two vehicles, one a white Chevrolet, license ROA 769, and standing next to them two males, one of whom was defendant, having a conversation. Knowles parked and watched through binoculars; he saw one man get into a vehicle and drive away at which time Martinez (18), Gonzales (15) and Dennis (16) walked toward defendant who was standing near a metal trash can; they all stood close together

---

[1] Dennis' testimony was read into evidence from the transcript of the preliminary hearing.

and conversed for several minutes, then defendant got into the white Chevrolet and drove away. Knowles drove in the parking area and approached the three boys, saw a brown paper bag at the base of a tree about 20 feet from where Dennis and Gonzales were standing, picked up the bag, opened it and found a .25 caliber chrome plated pistol and clip; he showed the gun and bag to the boys, then returned to where he found the gun and saw, about 15 to 18 feet away, a Dixie cup full of balloons; recognizing them, he approached the boys, informed them of what he had found, and arrested them. Dennis had $123 on his person. An hour later at the home of defendant's mother, in front of which was parked a white Chevrolet, license number ROA 769, defendant was arrested.

The quantity of heroin in each balloon would probably sell for $60 on the street; expert testimony established that the balloons contained heroin in usable quantities. Several latent fingerprints lifted from one of the balloons found in the Dixie cup were photographed and compared with defendant's finger and palm prints (Exh. 6); an expert positively identified a left thumb print found on the balloon as made by the same person (defendant) who made the print on Exhibit 6.

Defendant testified that in passing the park he saw Martinez and talked with him five minutes; he only said hello to Dennis and Gonzales. He denied giving or selling Dennis narcotics or asking him to sell them, hearing Dennis, Martinez or Gonzales talk about the sale of narcotics, having any heroin in his possession for sale and receiving any money from Dennis.

Based on the following the trial judge, over defendant's repeated objections,[2] allowed Dennis testimony to be read from the preliminary transcript. (Exh. 3).

On August 7, 1967, district attorney's investigator Exworthy called the probation department and talked to a Mr. Brown who advised him that on May 15, 1967,[3] Dennis was referred to them from the juvenile court, his grandmother, Minnie Johnson, picked him up and took him to Ada, Oklahoma, he is on probation for an offense in Pontotoc County, Oklahoma, and is ''a wardship of Judge Fred Andrews of the

---

[2]At the outset defendant objected to the use of the preliminary transcript, then moved for a continuance to permit Dennis to be brought here at the expense of the county under sections 1334, 1334.6, Penal Code; objection and motion were denied. Similar objection was raised on defendant's motion for new trial.

[3]The record shows this to be in error; the correct date shown in Exhibits 1 and 2 is March 21, 1967.

County Court," P.O. Box 336, Ada, Oklahoma; he then called the police department in Ada for a check on Dennis; on August 8, 1967, Officer Farmer called and said Dennis was living with Minnie and attending Irving School; he then telephoned Irving School and spoke with a Mr. (Dennis Van) Johnson who said that he was the one involved in the Nieto case, was living with Minnie in Ada, was not planning to return for a long time and intended to stay there; asked if he planned to leave Ada and come to Los Angeles, Dennis replied that he did not; he did not ask Dennis if he had any money or if he would come to Los Angeles or if there was any reason why he could not, knows no reason why Dennis could not come for the trial and did not attempt to talk to him after August 8, 1967. Subpoenas were issued April 17, June 15 and August 10, 1967, but none were served on Dennis.

Officer Kline, a defense witness, testified that in April 1967 subpoenas were issued but were not served; when he tried to serve Dennis in July 1967 for the August 4 trial he learned that Dennis had gone to Oklahoma but he did not try to contact him.

Appellant claims he is entitled to a reversal because Dennis' testimony was read from the preliminary transcript in violation of his Sixth Amendment right to be confronted by the witnesses against him as recently interpreted in *Barber* v. *Page,* 390 U.S. 719 [20 L.Ed.2d 255, 88 S.Ct. 1318] ; and the jury did not have the opportunity to look at Dennis and judge by his demeanor on the stand and the manner in which he testified whether he was worthy of belief.

█ Whereas under California law as it existed prior to January 1, 1967, the testimony of a witness given at a preliminary examination could be used at defendant's trial upon a mere showing that the witness is absent from the state (*People* v. *Carswell* (1959) 51 Cal.2d 602, 605 [335 P.2d 99] ), the Evidence Code which became operative on January 1, 1967, simultaneously with an amendment to Penal Code, section 686,[4] changed that rule. (*People* v. *Woods,* 265 Cal.App.2d 712, 715 [71 Cal.Rptr. 583].) Thus, under section 1291,

---

[4]Section 686, Penal Code, provides: ''In a criminal action the defendant is entitled: 3. To produce witnesses on his behalf and to be confronted with the witnesses against him in the presence of the court, except that:

'' (a) Hearsay evidence may be admitted to the extent that it is otherwise admissible in a criminal action under the law of this state.

'' (b) The deposition of a witness taken in the action may be read to the extent that it is otherwise admissible under the law of this state.''

Evidence Code,[5] as applied herein,[6] Dennis' testimony taken at the preliminary hearing was admissible if he was "unavailable as a witness" and defendant had the right and opportunity to cross-examine him with an interest or motive similar to that which he had at the trial (defendant, represented by competent counsel, had the opportunity to and did cross-examine Dennis at length at the preliminary hearing).

However, Dennis was "unavailable as a witness" if he was absent from the trial and the court was unable to compel his attendance by its process or the prosecutor exercised reasonable diligence but was unable to procure his attendance by the court's process. (§ 240, Evid. Code.)[7]

For his criminal activities herein a petition was filed against Dennis on March 13, 1967, and sustained March 21, 1967, by the juvenile court which referred Dennis to the probation department, released him to his mother and allowed him to leave California with his grandmother (Los Angeles County probation file [Exh. 1]; Superior Court file [Exh. 2]). On March 21, 1967, Dennis testified at the preliminary hearing; then the prosecution knew that he was a material witness and the probation department knew that he was leaving the state. Information was filed April 3, 1967, and defendant pleaded not guilty on April 4, 1967; his trial was set for May 15, 1967. On April 19, 1967, the probation department received verification by Judge Fred Andrews, Pontotoc, Oklahoma, that Dennis was living with Minnie at 418 West 4th Street, Ada, on probation there and a ward of the court.[8]

[5]Section 1291, Evidence Code, provides: "(a) Evidence of former testimony is not made inadmissible by the hearsay rule if the declarant is unavailable as a witness and: (2) The party against whom the former testimony is offered was a party to the action or proceeding in which the testimony was given and had the right and opportunity to cross-examine the declarant with an interest and motive similar to that which he has at the hearing."

[6]The trial was held during September 1967.

[7]Section 240, Evidence Code, defines "unavailable as a witness" and provides: "(a) Except as otherwise provided in subdivision (b), 'unavailable as a witness' means that the declarant is: (4) Absent from the hearing and the court is unable to compel his attendance by its process; or

"(5) Absent from the hearing and the proponent of his statement has exercised reasonable diligence but has been unable to procure his attendance by the court's process.

"(b) A declarant is not unavailable as a witness if the . . . absence of the declarant was brought about by the procurement or wrongdoing of the proponent of his statement for the purpose of preventing the declarant from attending or testifying."

[8]It appears that Dennis was on probation in Oklahoma at the time of his activities with defendant in California.

(Probation file [Exh. 1].) On April 17, June 15 and August 10, 1967, subpoenas were issued for Dennis but not served. Dennis' petition in juvenile court was dismissed May 12, 1967. On May 15, 1967, defendant's trial was continued on his own motion to June 15, and thereafter to July 31, then August 4, 1967. Officer Kline tried to serve Dennis in July 1967 for the August 4 trial and learned he was in Ada. No courtroom was available on August 4, 1967, and trial was continued to August 7, 1967. On August 7, 1967, the district attorney's office learned that Dennis was in Ada and his address, and that he was on probation there and a ward of the court. On the People's motion, the trial was continued to August 8, 1967; on the same day, after talking to Dennis, the district attorney's investigator knew that he did not plan to return and intended to stay in Ada; he did not ask Dennis to come to Los Angeles or thereafter attempt to talk to him and knows no reason why Dennis could not come here. On the People's motion the trial was continued to August 28, 1967, then again to September 5, 1967. A jury was empaneled on September 6 and the trial commenced September 7, 1967.

It cannot be said that Dennis' absence was brought about "by the procuring or wrongdoing" of the prosecution for the purpose of preventing him from "attending or testifying" (§ 240, subd. (b), Evid. Code) or that it was guilty of the kind of negligence shown in *Motes* v. *United States*, 178 U.S. 458 [44 L.Ed. 1150, 20 S.Ct. 993] (United States marshal permitted a witness who had been in custody to escape), and while prior to January 1, 1967, "a showing of due diligence to keep the witness within the state" (*People* v. *Carswell*, 51 Cal.2d 602, 605-606 [335 P.2d 99]; *People* v. *Dozier*, 236 Cal. App.2d 94, 105 [45 Cal.Rptr. 770]) was not required to render his prior testimony admissible, it is now apparent under section 240, Evidence Code, that when a witness is absent because the prosecution was not active in attempting by subpoena to secure his presence at the trial in a timely fashion, his testimony given at the preliminary hearing may not be used. (*People* v. *Harris*, 266 Cal.App.2d 426, 434 [72 Cal.Rptr. 423].) In *Harris*, "Six weeks had thus elapsed after the trial date was set during which the prosecution made no effort to see that Mr. Strickland would be available when the trial was held. The process server reported what he had done to the district attorney's office and that office, through him or by some other means, found that Strickland was supposed to be somewhere in Canada. . . .

■ "The district attorney's office was not active in attempting to secure Mr. Strickland's presence at the trial in a timely fashion. If the prosecution had moved alertly after the setting of the case, it seems clear that it could have had the witness present at the trial, and it is for this reason that we feel that his evidence given at the preliminary examination was not properly introduced at the trial." (266 Cal.App.2d at pages 431, 434.) Appellant argues that the delay in attempting to serve Dennis is much longer than the delay in attempting to serve Stickland. The facts here reveal no negligence in failing to serve Dennis in California inasmuch as he left immediately after the preliminary hearing before any trial date was set, but they do reflect a complete lack of reasonable or any diligence on the part of the prosecution, during the five months pending trial, to procure Dennis' attendance as a witness by court process after he returned to Oklahoma. ■ At this point, it should be noted that the absence referred to in section 240, Evidence Code, not limited to absence from the state, means absence from the hearing wherever the witness might be, and that the "reasonable diligence" the prosecution must exercise relates to the procurement of the witness' attendance "by the court's process." Thus, while the fact that one month before trial the district attorney's investigator talked to Dennis in Oklahoma but made no effort by request or persuasion to seek his presence at the trial (had Exworthy simply asked Dennis to come to Los Angeles he might have done so), and that two months prior to trial, when Officer Kline learned that Dennis was in Oklahoma, the prosecution made no effort to seek the cooperation of the probation department and Judge Andrews in Pontotoc County, Oklahoma, to arrange his return to California for the purpose of testifying at defendant's trial might be significant under the pronouncement of the United States Supreme Court in *Barber* v. *Page,* 390 U.S. 719 [20 L.Ed.2d 255, 88 S.Ct. 1318], that "a witness is not 'unavailable' . . . unless the prosecutorial authorities have made a good-faith effort to obtain his presence at trial" (20 L.Ed.2d at p. 260), under section 240 the reasonable diligence to be exercised is required only in procuring Dennis' attendance at defendant's trial by court process.

Dennis left California before the first trial date was set; from April 4, 1967, to September 7, 1967, five months elapsed during which, in July, the first and only effort was made to

serve Dennis with a subpoena in Los Angeles at which time Officer Kline learned he was in Oklahoma; prior to that time, on April 19, 1967, the probation department knew Dennis' exact address in Oklahoma, and on August 8, 1967, the district attorney's investigator talked to Dennis. ■ Whereas cases prior to the effective date of the Evidence Code hold that "The existence of permissive legislation to obtain the presence of a witness from another state does not force the decision that it is mandatory upon the prosecution to exercise it. [Citations.]" (*People* v. *Washington,* 248 Cal.App.2d 470, 475 [57 Cal.Rptr. 487]; see also *People* v. *Carswell,* 51 Cal.2d 602, 605 [335 P.2d 99]), it is now established that the provisions of section 240 make resort to the Uniform Act to Secure the Attendance of the Witnesses without the State in Criminal Cases necessary in efforts to compel a witness to attend a trial.[9] (Pen. Code, §§ 1334-1334.6; *People* v. *Casarez,* 263 Cal.App.2d 130, 133 [69 Cal.Rptr. 187]; *People* v. *Woods.* 265 Cal.App.2d 712, 714-715 [71 Cal.Rptr. 583]; see also *People* v. *Ashford,* 265 Cal.App.2d 673, 684 [71 Cal. Rptr. 619], as to use of depositions in criminal actions.) In *Woods,* the court said concerning the Uniform Act: "Under these acts a person within the State of Washington may be compelled to come to California to testify in a criminal case. . . .

"Under the law as it existed when the case at bench was tried (July 31, 1967) the fact that Mr. Buckley was in the State of Washington was not enough to make his former testimony admissible, since he was in a place from which his presence could be compelled by process." (Pp. 714-716.) That the Uniform Act is in force in Oklahoma is evident from the opinion in *Barber* v. *Page,* 390 U.S. 719 [20 L.Ed.2d 255. 88 S.Ct. 1318]. While as early as April 19, 1967, the probation department knew Dennis' exact address in Ada, Oklahoma, in July 1967 Officer Kline in trying to serve Dennis in California learned that he was in Oklahoma, and on August 7, 1967, the district attorney's office knew where Dennis lived and went to school, no effort of any kind was made by anyone to compel Dennis, in Oklahoma, by court process to attend defendant's trial.

■ The retroactive application of *Barber* v. *Page,* 390

---

[9]In *Barber* v. *Page,* 390 U.S. 719 [20 L.Ed.2d 255, 88 S.Ct. 1318], the United States Supreme Court held that the theory that it is impossible to compel the attendance of a witness because the process of the trial court is of no force without the jurisdiction no longer has validity in the criminal law.

U.S. 719 [20 L.Ed.2d 255, 88 S.Ct. 1318][10] (decided by the United States Supreme Court on April 23, 1968, more than seven months after defendant's trial) employed in *People* v. *Casarez*, 263 Cal.App.2d 130 [69 Cal.Rptr. 187]; *People* v. *Ashford*, 265 Cal.App.2d 673 [71 Cal.Rptr. 619]; *People* v. *Woods*, 265 Cal.App.2d 712 [71 Cal.Rptr. 583]; and *People* v. *Harris*, 266 Cal.App.2d 426 [72 Cal.Rptr. 423] (see also *People* v. *Johnson*, 68 Cal.2d 646 [68 Cal.Rptr. 599, 441 P.2d 111])[11] and here urged by appellant is unnecessary for while "the definition of 'unavailable' under *Barber* v. *Page* may not be coterminous with that in Evidence Code section 240" (*People* v. *Woods*, 265 Cal.App.2d 712, 717 [71 Cal.Rptr. 583]), it is apparent from the record that the prosecution did not show that Dennis was "unavailable as a witness" as defined by statute. It is further apparent from the record that Dennis' testimony was a substantial and important part of the People's case on counts I, II and III. He was an accomplice witness and the only one who testified to defendant's criminal activities as related to him; and in the light of the entire evidence we are not "able to declare a belief that it [the error] was harmless beyond a reasonable doubt." (*Chapman* v. *California*, 386 U.S. 18, 24 [17 L.Ed.2d 705, 711, 87

---

[10]"We start with the fact that the State made absolutely no effort to obtain the presence of Woods at trial other than to ascertain that he was in a federal prison outside Oklahoma. It must be acknowledged that various courts and commentators have heretofore assumed that the mere absence of a witness from the jurisdiction was sufficient ground for dispensing with confrontation on the theory that 'it is impossible to compel his attendance, because the process of the trial Court is of no force without the jurisdiction, and the party desiring his testimony is therefore helpless.' 5 Wigmore, Evidence § 1404 (3d ed 1940).

"Whatever may have been the accuracy of that theory at one time, it is clear that at the present time increased cooperation between the States themselves and between the States and Federal Government have largely deprived it of any continuing validity in the criminal law. . . .

"In short, a witness is not 'unavailable' for purposes of the foregoing exception to the confrontation requirement unless the prosecutorial authorities have made a good-faith effort to obtain his presence at trial. The State made no such effort here, and, so far as this record reveals, the sole reason why Woods was not present to testify in person was because the State did not attempt to seek his presence. The right of confrontation may not be dispensed with so lightly. ". . . The right to confrontation [conferred by the Sixth Amendment to the United States Constitution] is basically a trial right. It includes both the right to cross-examine and the occasion for the jury to weigh the demeanor of the witness." (20 L.Ed.2d pp. 259-260.)

[11]"These rulings emphasize the high court's belief in the importance of ensuring the defendant's right to conduct his cross-examination before a *contemporaneous* trier of fact, i.e., before the same trier who sits in judgment on the truth of the *witness'* direct testimony as it is spoken from the stand. [Citations.]" (68 Cal.2d at pp. 659-660.)

S.Ct. 824].) This conclusion does not affect the judgment as it relates to defendant's conviction of possession for sale of heroin as alleged in count IV.

■ Appellant's last contention that the prosecution was guilty of prejudicial misconduct is without merit. His claim is based on the prosecutor's cross-examination of him, particularly with reference to the validity of his marriage to one Connie and Connie's probation. Even if improper the same was ameliorated by the court's instructions and admonishment to the jury to disregard any questions relating to Connie. We presume that the jury abided by the court's instruction. Moreover, appellant has failed to point out in what manner such inquiries were prejudicial even if irrelevant.

For the foregoing reasons the judgment as to counts I, II and III is reversed and the cause remanded to the superior court for retrial on these counts. In all other respects the judgment is affirmed.

Wood, P. J., and Fourt, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied February 13, 1969. Peters, J., was of the opinion that the petition should be granted.