[Crim. No. 12926. Second Dist., Div. One. May 5, 1969.]

THE PEOPLE, Plaintiff and Respondent, v. DONALD LESLIE BERGER, Defendant and Appellant.

Donald Leslie Berger, in pro. per., and Maxwell S. Keith, under appointment by the Court of Appeal, for Defendant and Appellant.

Thomas C. Lynch, Attorney General, William E. James, Assistant Attorney General, and Marvin A. Bauer, Deputy Attorney General, for Plaintiff and Respondent.

LILLIE J.—Defendant Berger and codefendant Ruggiero were convicted by a jury of first degree robbery (Pen. Code,

§ 211); defendant also was found guilty of kidnaping for the purpose of robbery (Pen. Code, § 209). He admitted four prior felony convictions — grand theft (1946), burglary (1950), burglary (1955) and robbery (1955). Berger appealed from the judgment. On February 5, 1968, this court filed its opinion and entered its judgment affirming the judgment of conviction. (*People* v. *Berger*, 258 Cal.App.2d 622 [66 Cal. Rptr. 213].) A petition for rehearing was denied February 23, 1968, and petition for a hearing by the Supreme Court was denied April 4, 1968. Thereafter on January 13, 1969, the Supreme Court of the United States granted defendant's petition for writ of certiorari and ordered the judgment of this court be vacated and the case remanded for consideration in the light of *Barber* v. *Page*, 390 U.S. 719 [20 L.Ed.2d 255, 88 S.Ct. 1318]). Accordingly on February 7, 1969, the cause was remanded for further proceedings in conformity with the judgment of the Supreme Court of the United States; thus, the matter is before us for consideration in the light of that court's decision in *Barber* v. *Page*, 390 U.S. 719 [20 L.Ed.2d 255, 88 S.Ct. 1318].

The trial started July 28, 1966. On June 8, 1966, the victim and only witness to the robbery and kidnaping, Carl Arthur Dunston, testified against defendant at the preliminary hearing at the conclusion of which Dunston told Deputy Devich that he was leaving for Colorado on that date, would not be returning and his address would be 40091 East 70th Avenue, Commercial City, Colorado. On June 30, 1966, a subpoena was issued directed to Dunston at his local address; no attempt was made to serve it. On July 22, 1966, an investigator with the district attorney's office made the first effort to communicate with Dunston; he placed a telephone call to him at his home in Commercial City, Colorado; he did not speak to Dunston but talked to some of Dunston's relatives; Dunston's grandmother indicated that he had received a letter from the district attorney's office, and the investigator instructed her to make certain Dunston responded by telegram; thus on July 25, 1966, the investigator received two telegrams allegedly from Dunston in Colorado. On the day of trial (July 28, 1966) about an hour before he testified, the investigator placed a second call to Dunston's place of employment, American Smelting and Refining Co. near Denver, Colorado, but Dunston was not available; the call was transferred to his residence in Commercial City but no one answered. The investigator never spoke to Dunston in person or by telephone; the

telegrams are the only communication he has ever received from Dunston.

On the trial court's finding that Carl Dunston was not in the State of California, the transcript of Dunston's testimony taken at the preliminary hearing was introduced into evidence over defendant's objection that he was being deprived of his right to be confronted with the witness against him. Dunston testified that he was employed at Sam Cleveland's Chevron gas station; shortly before 10 p.m. on May 14, 1966, he was confronted by defendant pointing a gun, ''a little .22,'' at him. Ruggiero was with defendant; defendant told him he wanted all of his money and ordered him to get the keys to the cash box; while Ruggiero remained in the front office they went to the cash box in the island where defendant ordered him to open it; he did so and folded up approximately $150 in bills; defendant told him to ''walk back inside'' and ordered him to lie down for five minutes in the back room; when the men departed he went into the office and discovered his wallet was missing; he had last seen it on the counter where Ruggiero had been standing; having twice previously seen them together at Lil's Bar, he identified defendant and Ruggiero to police. Three days later, on May 17, 1966, Dunston saw defendant and Ruggiero at Lil's Bar; the police were summoned but they left before the officers arrived.

Other evidence established the following:

On May 17, 1966, Cleveland, Dunston's employer, received a call from him and went to Lil's Bar; as he approached he saw Dunston run down the street, and picked him up; he also saw two other men run down the street, followed them and, although he lost sight of them, was able to identify them as defendant and Ruggiero; previously he had seen defendant two or three times at Pick's Tavern.

Fred Lawrence was working at his Shell station on Sunland Boulevard on May 17, 1966, and around noon a Cadillac pulled up in front of his lube room and came to a screeching stop; one man ran around the side of the car and got in on the right-hand side, another ran around the corner so fast he had to grab onto the drinking fountain on the Coke machine in order to make the turn, jumped into the driver's seat and drove away; he was suspicious and turned the license number of the car over to police.

On May 17, 1966, David Meyers, Tom Stone, defendant and Ruggiero left their place of employment and went to Lil's Bar in Ruggiero's 1957 red cadillac; Meyers and Stone were

shooting pool when defendant and Ruggiero handed Stone the keys, told them to pick them up around the corner and left; when they went out to Ruggiero's car they saw defendant and Ruggiero standing between the tavern and another building motioning them to go down Sunland Boulevard; when they drove into a Shell station defendant and Ruggiero ran up to the car; Ruggiero got in behind the steering wheel and drove off.

On May 27, 1966, defendant and Ruggiero were arrested pursuant to a warrant in a private residence in Montebello; defendant was attempting to leave by the bathroom window when apprehended; Ruggiero was found standing in the dark in a bedroom behind an open door.

The defense consisted of the testimony of alibi witnesses and defendant's own testimony to the effect that for reprisal reasons he had been framed. He testified to a drug purchase by Dunston who claimed he had been "beat out of some whites" (benzedrine) for which he had paid $20 and wanted his money back because Ruggiero had introduced him to "Duke."

The preliminary hearing was had on June 8, 1966; by the time the cause was brought to trial, a month and a half later, apparently Dunston was in Colorado and, upon a finding by the trial court that he was not in the jurisdiction, the transcript of his testimony taken at the preliminary hearing was introduced in evidence. At that time this was entirely proper, for under California law as it existed in July 1966, the testimony of a witness given at such hearing could be used at defendant's trial upon a mere showing that the witness was absent from the state. (*People* v. *Carswell,* 51 Cal.2d 602, 605 [335 P.2d 99].) However, the Evidence Code, which became operative on January 1, 1967, simultaneously with an amendment to section 686, Penal Code, changed that rule (*People* v. *Nieto,* 268 Cal.App.2d 231, 235 [73 Cal.Rptr. 844]; *People* v. *Woods,* 265 Cal.App.2d 712, 715 [71 Cal.Rptr. 583]) as did *Barber* v. *Page,* 390 U.S. 719 [20 L.Ed.2d 255, 88 S.Ct. 1318] in January 1968, which held that the absence of a witness from the jurisdiction does not justify the use at the trial of the testimony taken at the preliminary hearing unless the state authorities have made a good faith effort to secure the presence of the witness at the trial. (390 U.S. at pp. 724-725 [20 L.E.2d at pp. 259-260].) The Evidence Code does not affect the disposition of this case but the Supreme Court of the United States on defendant's petition for writ of cer-

tiorari held that *Barber* v. *Page* shall be given retroactive application. (*Berger* v. *California* (1969) 393 U.S. 314 [21 L.Ed.2d 508, 89 S.Ct. 540].) ■ Thus, the sole issue before us is whether *Barber* v. *Page*, 390 U.S. 719 [20 L.Ed.2d 255, 88 S.Ct. 1318] requires a reversal of the judgment. We conclude that it does.

While the state authorities did attempt to ascertain that Dunston was in Colorado on July 26, 1966, they made no effort of any kind to obtain his presence at the trial. Insofar as this record reveals the sole reason why Dunston was not present to testify in person was because the state had made no effort by personal contact or otherwise to persuade the witness to return to California, nor did it attempt to secure his attendance at the trial. The investigator did no more than ask Dunston's grandmother to have him send a collect telegram to establish that he was not in California. No good faith attempt having been made by state authorities to secure the presence of Dunston at the trial, it was error to receive in evidence the transcript of his testimony taken at the preliminary hearing.

Without Dunston's testimony there is no evidence in the record of any robbery or kidnaping. Dunston was the victim and the only eyewitness and the only one who testified to defendant's criminal activities in robbing and kidnaping him on May 14, 1966. Thus we cannot ''declare the belief that [the error] was harmless beyond a reasonable doubt.'' (*Chapman* v. *California*, 386 U.S. 18 [17 L.Ed.2d 705, 87 S.Ct. 824].)

For the foregoing reasons the judgment is reversed and the cause remanded to the superior court for retrial on both counts.

Wood, P. J., and Fourt, J., concurred.