[Crim. No. 14663. Second Dist., Div. One. May 20, 1969.]

THE PEOPLE, Plaintiff and Respondent, v. WILLIE JAMES BAILEY, Defendant and Appellant.

Carl E. Jones, under appointment by the Court of Appeal, for Defendant and Appellant.

Thomas C. Lynch, Attorney General, William E. James, Assistant Attorney General, and Thomas Kallay, Deputy Attorney General, for Plaintiff and Respondent.

WOOD, P. J.—Defendant Bailey was accused in count 1 of grand theft (of automobile) from Mr. Page, in count 2 of violating section 10851 of the Vehicle Code (taking automobile without consent of owner, Mr. Page), and in count 3 of robbery of Mr. Bowers. Defendant Bailey and codefendant Scales were accused in count 4 of grand theft (of automobile) from

Mrs. Edwards, in count 5 of violating 10851 of the Vehicle Code (taking automobile of Mrs. Edwards), in count 6 of robbery of Mr. Schwartz, and in count 7 of assault with intent to murder Mr. John Marcroft. Bailey admitted allegations of the information that he had been convicted previously of two felonies (burglary). In a jury trial Bailey was found guilty on counts 2, 3, 5 and 6, and not guilty on counts 1 and 4. He was also found guilty of assault with a deadly weapon, a lesser and included offense in count 7. (The record does not show what determination was made with reference to Scales.) Bailey appeals from the ''judgment and conviction.''

Appellant contends that the court erred in permitting the preliminary-examination testimony of witnesses Schwartz and Edwards to be read at the trial.

Mr. Page testified that on May 5, 1966, about noon, he parked his light blue 1958 Cadillac automobile, license number QKT 343, in the parking lot at Lucky's Market at 43d Street and Central Avenue in Los Angeles; when he returned to the parking lot about 15 minute later, the automobile was gone; he did not give defendant Bailey, or anyone, permission to take the automobile; and the automobile was returned to him by police officers two days later.

Mr. Bowers testified that on May 5, 1966, about 12:30 p.m., he was driving a catering truck and selling coffee, doughnuts, and sandwiches from the truck; he stopped the truck at the Atlas Iron and Scrap Yard on Alameda Street and blew the air horn to let customers know that he was there; he served several persons, including defendant Bailey and another man; after he had served them, Bailey and the man ''came back''; Bailey had a blue steel revolver which resembles People's Exhibit 5, and, when he was about 3 feet away, he said: ''Give me your money''; he (witness) removed his coin changer and gave it to Bailey, and Bailey asked him for his wallet; he started to give Bailey the wallet, and Bailey told him to give it to the other man; he gave the wallet, which contained about $125, to the other man; Bailey also asked him for the money in his pocket, and he gave Bailey about $20; Bailey then told him to walk into the junk yard; he turned around while he was walking and saw Bailey and the man run to a light blue Cadillac, enter the Cadillac, and drive away; he wrote the license number, QKT 343, of the Cadillac on a piece of paper, and gave the piece of paper to police officers; a few days later he saw Bailey in a lineup at the

police station; and he is sure that Bailey was the man who took his money and the man he saw in the lineup.

Mr. Boslaugh, who works in the vicinity of the scrap yard, testified that on May 5, 1966, about 12:40 p.m., he purchased some food at the catering truck; while he was standing about 8 feet from the truck eating the food, he saw Bailey, who had purchased a 7-Up, talking with Mr. Bowers, who was standing between Bailey and another man; Bailey had a gun in his hand; the gun resembled People's Exhibit 5; he heard Bailey say: "All of it"; Mr. Bowers gave his coin changer to Bailey, and handed some money to the other man; the other man was defendant Scales; Bailey and Scales then ran to a blue Cadillac, got into it, and drove away; several days later he saw Bailey in a lineup at the police station; and he is certain that Bailey is the man who took the money from Mr. Bowers and who was in the lineup.

John Marcroft testified that on May 16, 1966 (11 days after the taking of Mr. Page's car and the robbery of Mr. Bowers), about 1 p.m., he and his brother came from a building at 5713 Holmes Avenue in Los Angeles and approached a catering truck which was parked in the street; an automobile was "pulled up alongside" the truck, and Bailey and Scales were holding guns and talking to the driver (Mr. Schwartz) of the truck; Scales said to Mr. Schwartz: "Give me your money. Take your money belt off"; Scales also took Mr. Schwartz' wallet; Bailey told him (witness) to stop; he stopped about 20 feet from the truck, and was "just looking"; he started to move again, and Bailey pointed the gun toward his chest and fired a shot at him; Bailey and Scales then jumped into the automobile and "drove off"; People's Exhibit 5 resembles the gun which Bailey had in his hand; People's Exhibit 7 (referred to as money belt and coin changer) resembles the money belt which Scales took from Mr. Schwartz; later that afternoon (May 16) he saw Bailey and Scales in a lineup at the police station; he is sure that Bailey and Scales were the men at the catering truck and the men at the lineup; and he is sure that Bailey was the man who fired the gun at him.

James Marcroft, the brother of John Marcroft, testified with reference to the events which occurred near the catering truck on May 16. His testimony was substantially the same as the testimony of his brother, except that he was returning to the building when a shot was fired, and he did not know who fired the shot. He also testified that the automobile used by the defendants was a tan, four-door, Cadillac.

Officer Alexander testified that on May 16, 1966, about 1:05 p.m., he received information with reference to the robbery of Mr. Schwartz; the information included a description of a 1958, beige or tan, four-door, Cadillac; about 1:25 p.m., he saw a Cadillac resembling the description parked at the curb in front of 1126 East 70th Street; he "ran a check" over his radio to determine whether the Cadillac was a stolen automobile, and was advised that it had been stolen; the Cadillac was locked, and he ordered a tow truck; when the tow truck arrived, a man came to him and said that his name was George Edwards and that he owned the Cadillac; Mr. Edwards had a key and he unlocked the door of the Cadillac; the license number of the Cadillac was LWM 334 and it was registered in the names of Corinne and George Edwards; there was a "metal-type coin changer" under the front seat; People's Exhibit 7 is the coin changer; he went into the two-story apartment building near the place where the car was parked; Officer Whittaker, who was on the first floor, told him to go upstairs and search the second floor; he went upstairs and saw Bailey lying face down on the floor near the stairwell, looking down the stairs; and he told Bailey to go downstairs.

Officer Whittaker testified that shortly after 1 p.m. on May 16 he received a radio broadcast that a robbery had occurred, that the robbers were in a tan, four-door, Cadillac, and that the Cadillac was parked in the vicinity of 70th Street and Central Avenue; he also received a description of two male Negroes "dressed in a certain manner"; he went to 70th Street and Central Avenue and saw "these two persons" run into a two-story apartment building there; he went into the building and saw Scales come out of a room; at that time Scales was wearing the same colored pants which he was wearing when he ran into the building but he was wearing a shirt which was different from the green shirt he had been wearing; he asked Scales whether anyone else was in the room, and Scales said: "No. Go in and check. Check if you like"; he went into the room and found the green shirt and a gun (People's Exhibit 5); he arrested Scales; Officer Alexander brought Bailey downstairs from the second floor, and Bailey was arrested.

Officer Cochran testified in substance that he was with Officer Whittaker when Scales was arrested in the apartment building, and that Exhibit 5 (gun) was found in the room, and that three live bullets and one expended bullet shell (Exhibit 8) were in the gun.

Mr. Schwartz and Mrs. Edwards testified at the preliminary examination. At the trial (out of the presence of jury), the People presented evidence with reference to the unavailability of Mr. Schwartz and Mrs. Edwards as witnesses at the trial. Mr. Dickensheets, a process server, testified in substance that he investigated the whereabouts of Mr. Schwartz; he discovered that Mr. Schwartz was in Detroit, Michigan; on September 8, 1966, he sent a telegram to Mr. Schwartz at 18010 Strathmore, Detroit, Michigan, and asked whether he planned to return to California; on September 9, he received a telegram from Mr. Schwartz which stated that he had testified at the preliminary examination and that he did not plan to return to California at present; on November 1, 1966, he sent another telegram to Mr. Schwartz at the same address in Detroit, and asked him whether he planned to return to California, and "If so, when?"; on that day he received a telegram from Mr. Schwartz which stated that he did not plan to return to California. Mrs. Williams testified in substance that she is the sister-in-law of Mrs. Edwards; Mrs. Edwards left California on November 13, 1966, and went to San Antonio, Texas, because her brother's wife had died and her brother was ill; she telephoned Mrs. Edwards at 7:15 p.m. "last night" at a telephone number in San Antonio, and talked with her; she told Mrs. Edwards that someone had come to her house to get Mrs. Edwards to come to court; and Mrs. Edwards said she could not return to California until Wednesday or Thursday.

Over defendants' objection, the court granted the People's request that the transcript of the testimony given by Mr. Schwartz and Mrs. Edwards at the preliminary examination be read in evidence at the trial.

Mr. Schwartz' testimony (at the preliminary examination) was in substance as follows: On May 16, 1966, he was driving his catering truck. About 1 p.m. he made a stop at 5715 Holmes Avenue. He opened the door and got out of the truck. A tan Cadillac pulled around the side of the truck and Bailey and Scales jumped out of the Cadillac with guns and demanded his money. He gave them all of his money. At that time some of the fellows were walking out of the factory to buy something off the truck, and the defendant Bailey fired his gun and said, "Get back." Exhibit 5 (gun) was the gun which Bailey used. Exhibit 7 is the coin changer which was taken from him. After the defendants had taken his money, they got into the Cadillac and drove away. A man and a woman drove by and told him to get into their car and they

would follow the Cadillac. They followed the Cadillac to 70th Street and Central Avenue where the Cadillac stopped. He (witness) went to the police station and reported the robbery and described the Cadillac and the area where the Cadillac stopped. Later, he saw defendant Scales in a lineup at the police station.

Mrs. Edwards' testimony (at the preliminary examination) was in substance that on May 16, 1966, about 8 a.m., she parked her tan 1958 Cadillac, license number LWM 334, in the parking lot at Lucky's store at 43d Street and Central Avenue; about 8:30 a.m. she returned to the place where she had parked the car, and it was gone; and she did not give defendant Bailey, or defendant Scales, or anyone, permission to take the car.

Defendant Bailey did not testify or call any witness. (Scales testified and called Officer Cochran.)

Appellant (Bailey) contends that the court erred in permitting the reading, at the trial, of the testimony given by Mr. Schwartz and Mrs. Edwards at the preliminary examination. In support of his contention, he cites *Barber* v. *Page*, 390 U.S. 719 [20 L.Ed.2d 255, 88 S.Ct. 1318], and *People* v. *Casarez*, 263 Cal.App.2d 130 [69 Cal.Rptr. 187].

The trial in the present case was several months prior to the decision in *Barber* v. *Page, supra*. It has been held that said decision is to be applied retroactively. (See *Berger* v. *California*, 393 U.S. 314 [21 L.Ed.2d 508, 89 S.Ct. 540], decided January 13, 1969.)

In *Barber* v. *Page, supra*, a witness who had testified at the preliminary hearing was in a federal penitentiary in Texas when the defendant was brought to trial in Oklahoma. The State of Oklahoma made no effort to have the witness present at the trial other than to ascertain that he was in the federal penitentiary outside Oklahoma. The trial court, over defendant's objection, permitted the transcript of the witness' testimony at the preliminary hearing to be read to the jury on the ground that the witness was unavailable to testify because he was outside the jurisdiction. The Supreme Court reversed the judgment and said that a witness is not unavailable unless the prosecutorial authorities have made a good faith effort to obtain his presence at the trial. (*Barber* v. *Page, supra*, 20 L.Ed.2d 255, 270; see *People* v. *Nieto*, 268 Cal.App.2d 231, 239 [73 Cal.Rptr. 844]; *People* v. *Casarez, supra*, pp. 131, 132-133.)

In *People* v. *Casarez, supra*, a witness who had testified at the preliminary examination in California, was in Illinois.

The prosecutorial authorities determined that the witness was in Chicago, and they talked to him and his brother by telephone. The authorities, however, made no effort to persuade the witness to return to California (see *People* v. *Nieto, supra,* pp. 231, 238), nor did they seek his attendance at the trial under the Unifom Act to Secure the Attendance of Witnesses from Without a State in Criminal Proceedings, and said Uniform Act was in effect in California and Illinois at the time of defendant's trial. (See Pen. Code, § 1334 et seq; see *Barber* v. *Page, supra,* 20 L.Ed.2d 255, 259 [footnote 4], wherein it is noted that said Uniform Act was in force in 45 states as of 1967.)[1] The trial court (in *Casarez*) found that the witness was absent from the jurisdiction and received his prior testimony in evidence. The appellate court reversed the judgment.

 In the present case, it was error to permit the testimony of Mrs. Edwards to be read in evidence. The record does not show that the prosecutorial authorities made any effort to persuade her to return from Texas to California or that they sought her attendance under the Uniform Act (which was in effect at the time of the trial in California[2] and in Texas[3]), or that they made any effort to obtain her presence at the trial.

 As to Mr. Schwartz, who was in Michigan, the prosecutorial authorities sent him two telegrams inquiring whether he planned to return to California; and, in reply to each telegram, Mr. Schwartz sent a telegram stating that he did not intend to return to California at present. The record does not show that the prosecutorial authorities made any other effort to persuade Mr. Schwartz to return to California or that they sought his attendance under the Uniform Act (which was in effect in California[2] and Michigan[4] at the time of the trial). In the circumstances, it was error to permit the prior testimony of Mr. Schwartz to be read in evidence.

Respondent asserts, however, that said errors were not prejudicial in that there was no reasonable possibility that a result more favorable to defendant Bailey would have been

---

[1]See 9 Uniform Laws Ann. (1967 Supp.), p. 50.

[2]Penal Code, section 1334 et seq.

[3]Laws 1951, ch. 441, p. 798, as amended. (See 9 Uniform Laws, Ann., *supra.*)

[4]Pub. Acts 1931, No. 309, as amended (see Mich. Stats. Ann., § 28.1020, p. 468) which includes provisions similar to the Uniform Act. (See National Conference of Commissioners of Uniform State Laws [1966], p. 253.)

reached if the court had not received the testimony of Mr. Schwartz and Mrs. Edwards. (See *Chapman* v. *California*, 386 U.S. 18 [17 L.Ed.2d 705, 87 S.Ct. 824 , 24 A.L.R.3d 1065].)

 With reference to count 6 (robbery of Mr. Schwartz on May 16), Mr. Schwartz (the victim) testified in detail regarding the manner in which he was robbed. His testimony, of course, was direct evidence of the robbery and ''a substantial and important part'' of the People's case on said count. (See *People* v. *Casarez, supra,* pp. 130, 134; *People* v. *Nieto, supra,* pp. 231, 240.) In the *Casarez* case one of the questions was whether it was prejudicial error to receive in evidence, at the trial, the testimony of a witness (Ross) at the preliminary hearing. It was held therein that it was prejudicial error, and it was said (pp. 130, 134) : ''. . . It is likewise true the testimony of Tom Ross was well corroborated by substantial circumstanial evidence. However, be this as it may, the fact remains Ross' testimony was a substantial and important part of the respondent's case. Thus, we cannot hold there was no reasonable possibility that a result more favorable to appellant would have been reached if the court had not admitted Ross' testimony (see *Chapman* v. *California* . . .).'' In the present case, it was prejudicial error, as to count 6, to permit the testimony of Mr. Schwartz to be read to the jury.

 With reference to count 5 (taking vehicle on May 16 without consent of Mrs. Edwards), it was prejudicial error to permit the testimony of Mrs. Edwards to be read to the jury. Her testimony was a substantial and important part of the People's case on said count in that her testimony was in effect the only evidence that the tan Cadillac had been taken without her consent.

 With reference to the conviction on count 7 (lesser offense—assault with deadly weapon on John Marcroft on May 16), Mr. Schwartz' testimony tended to corroborate the testimony of John Marcroft (the victim) that defendant Bailey fired a shot. As above shown, Mr. Schwartz testified, in part, to the effect that while Bailey and Scales were robbing him, some of the fellows came out of the factory, and defendant Bailey fired a gun and said, ''Get back.'' He did not testify as to the number of fellows who came out, or who they were, or to whom Bailey addressed those words, or at whom, if anyone, the gun was fired. His testimony was cumulative with respect to other corroborative testimony—testimony of James Marcroft (brother of victim)—that a shot was fired.

James did not know who fired the shot. Schwartz' testimony also was corroborative of John's (victim's) testimony that defendant Bailey fired a shot, but it was not corroborative of John's testimony that Bailey fired a shot at John. Schwartz did not say that Bailey fired at John or at anyone. John's testimony was direct and complete evidence of all the elements of the charge of assault—he testified that he was sure that defendant Bailey was the man who fired the gun at him. Under such circumstances, and in view of the cumulative or corroborative character of Schwartz' testimony with respect to count 7, Schwartz' testimony as to that count was not a substantial and important part of the People's case; and the error in permitting the reading of his testimony as to that count was harmless beyond a reasonable doubt.

In summary, with reference to the above conclusions, count 2 (taking automobile of Mr. Page without his consent) and count 3 (robbery of Mr. Bowers) pertained to occurrences on May 5, and were not involved, of course, in the matter of the reading of testimony of absent witnesses as to occurrences on May 16. The evidence supports the judgment as to counts 2 and 3. Count 5 (taking automobile of Mrs. Edwards without her consent) and count 6 (robbery of Schwartz) pertained to occurrences on May 16, and the testimony of Mrs. Edwards (in Texas at time of trial) was a substantial and important part of the case as to count 5—her testimony was the only evidence that she did not consent to the taking of her automobile; and the testimony of Schwartz (in Michigan) was a substantial and important part of the case as to count 6—his testimony was a detailed statement by himself as the victim of the robbery. As hereinabove indicated, under the circumstances here, the reading of the testimony of Mrs. Edwards and Mr. Schwartz was prejudicial error, under the rule in *Barber* v. *Page, supra.* Count 7 (assault on John Marcroft) also related to May 16, but as above indicated, under the circumstances here, the testimony of Schwartz as to that count was not a substantial and important part of the case, and the reading of Schwartz' testimony as to count 7 was not prejudicial error. The evidence supports the judgment on that count.

The judgment as to counts 2, 3, and 7 is affirmed. The portion of the judgment as to counts 5 and 6 is reversed and the cause as to those counts only is remanded to the superior court for retrial.

Fourt, J., and Lillie, J., concurred.